**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**WEST PALM BEACH DIVISION**

**Case No.  9:26-cv-80308-AMC**

MICHAEL TENNENBAUM,

　　　Plaintiff,

v.

AIRCRAFT TRANSPORT SERVICES, INC.,

　　　Defendant.

_____/

**AMENDED COMPLAINT**

Plaintiff Michael Tennenbaum ("Plaintiff" or "Mr. Tennenbaum") sues Defendant Aircraft Transport Services, Inc. ("ATS"), and alleges as follows:

**Nature of the Action**

1.　　　This civil action for breach of contract, writ of replevin, and injunctive relief derives from Defendant's numerous breaches of a lease agreement for their use of a Gulfstream V jet aircraft; Defendant's wrongful detention of that aircraft, its logbooks, and maintenance and other records following their defaults; and Defendant's improper removal of parts from Plaintiff's aircraft to install them on another aircraft without Plaintiff's consent.

2.　　　On or about February 15, 2024, Mr. Tennenbaum and ATS entered into an Aircraft Specific Lease Agreement (the "Lease Agreement"), under which Mr. Tennenbaum sublet to ATS a Gulfstream Aerospace model G-V with the United States Registration number N176SM (the "Aircraft").  A copy of the Lease Agreement is attached as **Exhibit A**.

3.      As set forth more fully below, ATS breached the Lease Agreement by, among other things, failing to pay rent due to Plaintiff, failing to make required third-party engine coverage and maintenance payments, failing to provide accurate flight logs, and failing to immediately return the Aircraft to Plaintiff following the automatic termination of the Lease Agreement.

4.      ATS also removed numerous parts from the Aircraft without Plaintiff's consent and dispersed those parts for use on another plane affiliated with ATS, rendering the Aircraft unairworthy.

5.      Following ATS's default, Mr. Tennenbaum exercised his right under Paragraph 14 of the Lease Agreement to demand immediate return of the Aircraft and related logs and records. *See* **Exhibit B** (the "Demand Letter").  ATS refused and prevented Plaintiff's agents from retrieving the Aircraft.  Even though its defaults terminated its rights as a lessee, including its right of possession, ATS also announced its intent to reinstall removed parts on the Aircraft and refuses to comply with Plaintiff's cease and desist demands relating to the same.

6.      Among other remedies for Defendant's breaches and wrongful conduct, Plaintiff seeks a Temporary Restraining Order and issuance of a writ of replevin for the immediate return of the Aircraft, logbooks and maintenance records and relief flowing from Defendant's numerous breaches of the Lease Agreement.

## The Parties

7.      Plaintiff Michael Tennenbaum is an individual who maintains a primary residence in California.  Thus, he is a California citizen.

8.      Defendant ATS is a Florida corporation with its principal place of business in Melbourne, Florida.  Thus it is a Florida citizen.

**Jurisdiction and Venue**

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and it is between a citizen of Florida and a citizen of California.

10.      The Court has personal jurisdiction over ATS because it is a citizen of Florida and, as shown below, it explicitly consented to personal jurisdiction in this Court in the Lease Agreement.  Ex. A, ¶ 15.C.

11.      Venue is proper in this Court because the Lease Agreement includes a venue selection clause designating the Southern District of Florida as the court with exclusive jurisdiction to hear a dispute under the Lease Agreement.  *Id.*

**Factual Allegations**

12.      Mr. Tennenbaum and Defendant entered into the Lease Agreement on or about February 15, 2024.  Ex. A at 1.

13.      Shortly after, Mr. Tennenbaum caused the Aircraft to be delivered to ATS.

14.      Under the Lease Agreement, ATS gained the right to use the Aircraft.

15.      In exchange, ATS agreed to make monthly rent payments, Ex. A ¶ 4, and to make all payments to third parties due under specified engine and other equipment maintenance service programs. *Id.* ¶ 5.

16.      ATS also agreed to provide Mr. Tennenbaum with "a monthly flight log certified by the Chief Pilot of the Lessee reflecting flight operations by the Lessee for the previous month's utilization of the Aircraft" on the fifteenth of each month.  *Id.* at 13, Schedule No. 2-A to Lease Supplement.

17.     Although ATS took possession of the Aircraft, it failed to comply with its obligations under the Lease Agreement.

18.     ATS made numerous late payments of rent, including, most recently, in December 2025 and January 2026.

19.     ATS also failed to make rent payments at all in February and March of 2026.

20.     ATS also failed to make required third-party maintenance program payments as required by the Lease Agreement.

21.     Specifically, Schedule No. 2-A to the Lease Supplement required Defendant to make payments for maintenance of the engines, which are enrolled in the Rolls-Royce Corporate Care plan; and for the Auxiliary Power Unit, which is enrolled in the Honeywell Gold Maintenance Service Plan; the Honeywell HAPP Avionic Maintenance Program; and the Honeywell MPP. *Id.* at 15.

22.     In fact, a promissory note that Defendant recently issued to Rolls Royce for engine maintenance was ultimately not honored. See **Exhibit C** ¶ 8.  The current debt to Rolls Royce for maintenance payments due under the Lease Agreement exceeds $1 million  *Id.*  Because of ATS's nonpayment, Rolls Royce has suspended the engine maintenance program for the Aircraft. *Id.* ¶ 10.

23.     Should Rolls Royce cancel the contract, Mr. Tennenbaum would be required to reengage Rolls Royce and pay new, higher, program rates to bring the engines into proper maintenance and would have to pay for each hour logged on each engine.  *Id.* ¶ 11.

24.     Currently, the Aircraft has over 16,000 hours of engine time.  *Id.* ¶ 12.

25.     To buy back into the program should the contract be canceled, Mr. Tennenbaum would have to pay 16,000 hours times the new rate for each engine.  *Id.* ¶ 13.

26.     This would likely result in well over $20 million in fees just to buy back into the maintenance program.  *Id.* ¶ 14.

27.     Honeywell likewise will not perform required maintenance on the Aircraft until the past due amounts are brought current.  *Id.* ¶ 9.

28.     The failure to maintain full participation in the maintenance programs has left the Aircraft without financial recourse from Rolls Royce or Honeywell should a problem arise with those covered parts during operation.  *Id.* ¶ 16.

29.     ATS's non-payment of the required rent and maintenance program payments is a default under the plain language of the Lease Agreement.

30.     Paragraph 14(A) of the Lease Agreement defines a default as ATS's failure "to pay any amounts due to be paid by Lessee under this Agreement within three (3) business days of the date such amount is due."  Ex. A.

31.     Paragraph 14 also requires that, in the event of a default enumerated by that paragraph, the Lease Agreement is "**deemed terminated**" and "**Lessee shall immediately return the Aircraft** . . ."  *Id.* (emphasis supplied).

32.     On March 12, 2026, counsel for Mr. Tennenbaum wrote to Mr. Scotto, President and CEO of ATS, to inform ATS that it was in default of the Lease Agreement.  Ex. B.

33.     Among other breaches, Plaintiff's letter identified ATS's failure to pay rent and failure to make payments on the maintenance plan for the engines as causes of ATS's default.  *Id.*

34.     In the letter Plaintiff also demanded the immediate return of the Aircraft pursuant to Paragraph 14 of the Lease Agreement.  *Id.*

35.     Counsel for ATS acknowledged receipt of the March 12, 2026, letter by replying to the transmittal email but failed to substantively respond.

36.     Accordingly, Mr. Tennenbaum directed Mr. Antonio Villani, the Vice President of Aerospec International, Inc. ("Aerospec") to inspect and retrieve the Aircraft from ATS.  **Exhibit D** ¶ 7.

37.     Mr. Tennenbaum retains Aerospec to help manage the Aircraft.

38.     The Aircraft is or was held in a hangar rented by ATS at the Mesa Gateway Airport in Mesa, Arizona.  *Id.* ¶ 8.

39.     Mr. Villani approached ATS's hangar and requested permission to inspect and retrieve the Aircraft.  *Id.* ¶ 9.

40.     ATS personnel denied Mr. Villani's request to enter the hangar containing the Aircraft.  *Id.* ¶ 10.

41.     After this first failed attempt to access the Aircraft, Mr. Villani contacted the Mesa Police Department and requested a civil assist.  *Id.* ¶ 11.

42.     On or about March 18, 2026, Mr. Villani returned to the hangar accompanied by an officer from the Mesa Police Department.  *Id.* ¶ 12.

43.     An employee of ATS initially refused Mr. Villani entry a second time.  However, Mr. Villani and the Mesa Police Department officer were eventually allowed inside to view the Aircraft.  *Id.* ¶ 13.

44.     Mr. Villani noted that numerous parts were missing from the Aircraft, including the lefthand engine inlet cowl and the righthand engine lower cowl door. There was also a heat shield missing from the LH heat exchangers that protects the LH battery charger.  Furthermore, both LH and RH flaps were removed.  *Id.* ¶ 14.

45.     Mr. Villani also observed what appeared to be ongoing maintenance in the tail compartment of the Aircraft.  *Id.* ¶ 15.

46.     When Mr. Villani asked to view the maintenance records, flight logs, and other documents associated with the Aircraft, ATS employees directed him to a room containing documents relating to a different plane.  *Id.* ¶ 16.

47.     Because the interaction appeared peaceful, the Mesa Police Department officer left the scene.  ATS employees then changed their demeanor and informed Mr. Villani that he needed to leave the hanger.  The ATS employees refused to allow Mr. Villani further access to the Aircraft or the maintenance records, flight logs, and other documents associated with it.  *Id.* ¶ 17.

48.     Prior to Mr. Antonio Villani's inspection, Mr. Steve Villani, the President of Aerospec,  became aware that ATS removed an intercooler/PAC from the Aircraft.  Ex. C ¶ 17.

49.     Upon further investigation, it appeared more parts had been removed from the Aircraft.  *Id.* ¶ 18.

50.     Neither Aerospec nor Mr. Tennenbaum granted ATS permission to remove parts from the Aircraft.  *Id.* ¶ 19.

51.     Mr. Villani further discovered that ATS transferred many of the Aircraft parts to a different aircraft with tail number N585D.  *Id.* ¶ 20.

52.     Mr. Villani contacted the owner of N585D and informed him that parts were transferred to his aircraft without permission from the owner of the Aircraft the parts originated from.  *Id.* ¶ 21.

53.     The owner of N585D eventually agreed to transfer the parts back, but informed Mr. Villani that ATS refused to compensate him or exchange the parts.  *Id.* ¶ 22.

54.     ATS has also failed to timely provide access to the Aircraft's records, including the flight logs and maintenance records.  *Id.* ¶ 25.

55.     This failure has caused Mr. Steve Villani to travel to Arizona to physically view records associated with the Aircraft. *Id.* ¶ 26.

56.     The documentation logging the flights and maintenance of an aircraft is critical to establishing the value of the plane. Without these records, the value of an aircraft depreciates significantly. *Id.* ¶ 28.

57.     Defendant has continued to refuse to return the Aircraft despite his breach.

58.     The Aircraft continues to have missing parts and delayed maintenance, rendering it unable to fly.

59.     Defendant has also failed to compensate Mr. Tennenbaum for its numerous breaches of the Lease Agreement.

60.     Mr. Tennenbaum has engaged Lewis Brisbois to represent it and is obligated to pay the firm reasonable fees for its services.

61.     All conditions precedent to the commencement of this action and the granting of the relief requested have occurred, have been satisfied, or have been waived.

## COUNT I

### (Breach of Aircraft Lease Agreement)

62.     Mr. Tennenbaum fully incorporates here the allegations in paragraphs 1 through 61.

63.     The Lease Agreement constituted a valid and enforceable contract between Mr. Tennenbaum and ATS.

64.     Both Mr. Tennenbaum and ATS executed the Lease Agreement.

65.     Mr. Tennenbaum fulfilled his obligations under the Lease Agreement by supplying the Aircraft.

66.     ATS had, among other things, the obligation under the Lease Agreement to (a) make timely rent payments; (b) make required third-party engine coverage and maintenance payments, and (c) provide accurate flight logs.

67.     ATS failed to fulfill these obligations.

68.     Consequently, ATS breached the Lease Agreement.

69.     Under Paragraph 14 of the Lease Agreement, Mr. Tennenbaum has the right to demand the immediate return of the Aircraft.  He did so, but ATS failed to return the Aircraft and continues to detain it.

70.     ATS's breaches of the Lease Agreement have damaged Mr. Tennenbaum by failing to compensate him for the lease of the Aircraft, rendering it unairworthy, degrading the value of the Aircraft, and otherwise depriving Mr. Tennenbaum of his Property.

WHEREFORE, Mr. Tennenbaum demands: (1) monetary damages for the breaches of the Lease Agreement; and (2) to preserve the status quo and also prevent ongoing spoliation of evidence, a related temporary restraining order and preliminary injunction that: (a) precludes Defendants from doing any further work on, tampering with, manipulating or otherwise physically touching or contacting the Aircraft and/or its associated parts; and (b) precluding Defendants from destroying, altering, and requiring the return of the Aircraft's logbooks, and other records to Mr. Tennenbaum, which are also important evidentiary items in this matter; and (c) directing ATS to immediately return the Aircraft, logbooks, and related records to Mr. Tennenbaum.

### COUNT II

**(Replevin under Fla. Stat. § 78.068)**

71.     Mr. Tennenbaum incorporates the allegations in paragraphs 1 through 61.

72. The claimed property is the Gulfstream Aerospace model G-V with the United States Registration number N176SM, along with all its associated logbooks and maintenance and other records.

73. Mr. Tennenbaum is the rightful possessor of the Aircraft and associated logbooks and records, as demonstrated by the Lease Agreement. *See* Ex. A.

74. ATS breached the Lease Agreement and Mr. Tennenbaum exercised his right to demand immediate return of the Aircraft and associated logbooks and records under Paragraph 14 of the Lease Agreement. *See* Ex. B.

75. Despite multiple demands, ATS refuses to return the Aircraft and associated logbooks and records.

76. The Aircraft has not been taken for a tax, assessment, or fine pursuant to law.

77. The Aircraft has not been taken under an execution or attachment against the property of the Plaintiff.

78. Under the circumstances, Mr. Tennenbaum has legitimate concerns that the Aircraft and its associated logbooks and records may be tampered with, damaged, concealed, destroyed or otherwise altered or spoliated absent the relief sought.

79. Despite its breaches, ATS has denied Mr. Tennenbaum's agents access to the Aircraft; removed parts from the Aircraft; distributed some of those removed parts to another ATS-affiliated plane, and refused to provide proper logbooks and records for the Aircraft.

80. If ATS does not return the Aircraft and associated logbooks and records further damage will result.

81.     Mr. Tennenbaum is ready and able to post a reasonable bond as determined by the Court, which should be minimal under these circumstances, as Defendant no longer has a right to possession and use of the Aircraft based on its numerous breaches of the Lease Agreement.

WHEREFORE, Mr. Tennenbaum seeks a writ of replevin ordering the immediate return of Aircraft and all associated logbooks, maintenance and other records.

## COUNT III

### (Replevin under Fla. St. §§ 78.065 and 78.067)

82.     Mr. Tennenbaum incorporates the allegations in paragraphs 1 through 61.

83.     In the alternative, should the Court not grant the relief requested in Count II, Mr. Tennenbaum seeks the relief requested under this Count III.

84.     The claimed property is the Gulfstream Aerospace model G-V with the United States Registration number N176SM along with all its associated logbooks and records.

85.     Mr. Tennenbaum is the rightful possessor of the Aircraft and its associated logbooks and records as demonstrated by the Lease Agreement.  *See* Ex. A.

86.     ATS breached the Lease Agreement and Mr. Tennenbaum exercised his right to demand immediate return of the Aircraft and associated logbooks and records under Paragraph 14 of the Lease Agreement.  *See* Ex. B.

87.     ATS has refused to return the Aircraft and associated logbooks and records.

88.     The Aircraft has not been taken for a tax, assessment, or fine pursuant to law.

89.     The Aircraft has not been taken under an execution or attachment against the property of the Plaintiff.

WHEREFORE, Mr. Tennenbaum seeks a writ of replevin ordering the immediate return of Aircraft and associated logbooks and records

Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
*Counsel for Plaintiff Michael Tennenbaum*
401 E. Jackson Street
Suite 3400
Tampa, FL 33602
813-739-1900

*/s/ David S. Hendrix*
David S. Hendrix, Esq.
Florida Bar No. 827053
*david.hendrix@lewisbrisbois.com*
*fiona.johnson@lewisbrisbois.com*
Christopher White
Florida Bar No. 1022219
J. Jay Thornton
Florida Bar No. 323070
*jay.thornton@lewisbrisbois.com*
Maximilien Palenzuela;
Florida Bar No. 1031444
*Max.palenzuela@lewisbrisbois.com*